UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| STONE CREEK VILLAGE § | CASE NO. 5:10-bk-54343 | |
| PROPERTY OWNERS § | | |
| ASSOCIATION, INC. § | | |
| *Debtor* § | | |
| § | | |
| § | | |

CHAPTER 11 DEBTOR'S FIRST AMENDED PROPOSED PLAN OF REORGANIZATION

PRINS LAW FIRM
4940 Broadway, Suite 108
San Antonio, Texas 78209
(210) 820-0833 [telephone]
(210) 820-0929 [facsimile]
*Attorney for Debtor*

DATED: JUNE 13, 2011

1

TABLE OF CONTENTS

Article 1.  Introduction............................................................................................................. 3

Article 2.  Definitions. ............................................................................................................. 5

Article 3.  Classification of Claims.......................................................................................... 8

Article 4. Payment of Class A Claims ..................................................................................... 8

Article 5. Payment of Class B Claims ..................................................................................... 9

Article 6. Payment of Class C Claims ................................................................................... 11

Article 7. Payment of Class D Claims ................................................................................... 11

Article 8. Identify of Impaired/ Not Impaired Claims ........................................................... 12

Article 9. Acceptance or Rejection of Plan............................................................................ 12

Article 10.  Executory Contracts and Unexpired Leases. ...................................................... 12

Article 11. Provisions Covering Distributions....................................................................... 13

Article 12.  Resolving Disputed Claims ................................................................................ 13

Article 13. Default. ................................................................................................................ 13

Article 14. Miscellaneous. ..................................................................................................... 14

Adoption of Plan.................................................................................................................... 16

# PLAN OF REORGANIZATIONPROPOSED BY
# STONE CREEK VILLAGE PROPERTY OWNERS ASSOCIATION, INC.

This Plan of Reorganization ("Plan") is proposed byStone Creek Village Property Owners Association, Inc. ("Debtor") pursuant to 11 USC 1121(a) *et seq.*for the resolution of Debtor's outstanding creditor claims.

### ARTICLE 1. INTRODUCTION

1.1. <u>About the Debtor</u>

The Stone Creek Village Property Owners' Association ("Debtor" or "the Association") is a Texas corporation established as a beneficial organization to preserve and protect the value of the Stone Creek Apartments in Boerne, Texas and the collective interests of the individual property owners who comprise the membership of the Association. The Association's duties and operations are governed by that Declaration of Covenants, ConditionsRestrictions and Dedication of Easements and its Amendments as recorded in the Records of Kendall County, Texas.The Association has performed its duties on an ongoing basis since approximately 2007 and operations are managed by Bristile Properties as on-site property manager. Historically, the Association operates on a break-even basis, in some months carrying a small surplus, and in others running a narrow deficit. The Association ("Debtor") commenced a bankruptcy case by filing on November 4, 2010 (the "filing date") a voluntary petition under 11 U.S.C. 101 *et seq.* (the United States "Bankruptcy Code").Since the Chapter 11 proceeding commenced, the Debtor has continued normal operations, including upkeep, maintenance, and leasing activities at the Stone Creek Apartments. The case is pending before the Honorable Leif M. Clark, United States Bankruptcy Judge, under case number 5:10-bk-54343-LMC. The Debtor has remained in possession of its property, and has continued to conduct its own financial affairs as debtor-in-possession pursuant to Section 1108 of the Bankruptcy Code. 11 U.S.C. §1108.

1.2. <u>Disclaimers</u>

**THE INFORMATION CONTAINED IN THIS DOCUMENT HAS BEEN SUBMITTED BY THE DEBTOR, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DOCUMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN WHICH IS NOT CONTAINED IN THIS DOCUMENT NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION IN HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED IN THIS**

DOCUMENT SHOULD BE REPORTED TO THE DEBTOR, WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE. THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DOCUMENT IS CORRECT, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE ITS ACCURACY. THE INFORMATION CONTAINED IN THIS DOCUMENT AND IN THE ATTACHMENTS HERETO HAS NOT BEEN INDEPENDENTLY AUDITED EXCEPT AS SPECIFICALLY REFERENCED HEREIN. UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DOCUMENT ARE MADE AS OF THE DATE HEREOF. THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY UPON BOOKKEEPING PERFORMED BOTH INTERNALLY AND BY OUTSIDE SERVICES. THIS DOCUMENT CONTAINS BOTH THE PLAN AND ALL DISCLOSURES DEBTOR IS REQUIRED TO MAKE PURSUANT TO 11 U.S.C. 1125. EACH CREDITOR, INTEREST HOLDER, AND PARTY-IN-INTEREST IS URGED TO REVIEW THE PLAN AND ACCOMPANYING DISCLOSURES IN FULL PRIOR TO VOTING ON THE PLAN TO INSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THE DISCLOSURES. THE DEBTOR MAKES NO REPRESENTATIONS WITH RESPECT TO THE TAX EFFECTS (LOCAL, STATE OR FEDERAL) ON CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY THE DEBTOR. CREDITORS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PERSONAL PROFESSIONAL ADVISORS IF THEY HAVE ANY SUCH QUESTIONS. CONFIRMATION OF THE PLAN WILL DISCHARGE THE REORGANIZED DEBTOR FROM ALL OF ITS PRE-FILING DATE DEBTS BY VIRTUE OF THE ORDER OF CONFIRMATION OR SECTION 1141(d) OF THE BANKRUPTCY CODE, EXCEPT AS PROVIDED FOR SPECIFICALLY IN THE PLAN. CONFIRMATION MAKES THE PLAN BINDING UPON THE REORGANIZED DEBTOR AND ALL CREDITORS AND OTHER PARTIES IN INTEREST, REGARDLESS OF WHETHER OR NOT THEY HAVE ACCEPTED THE PLAN. IN ADDITION, PURSUANT TO SECTION 1141(d)(1)(B) OF THE BANKRUPTCY CODE, CONFIRMATION OF THE PLAN WILL RESULT IN THE TERMINATION OF ALL RIGHTS AND INTERESTS OF CREDITORS AS PROVIDED FOR IN THE PLAN, AND THE RESERVED INTERESTS AND EXCLUDED ASSETS OF THE REORGANIZED DEBTOR WILL REMAIN THE PROPERTY OF THE REORGANIZED DEBTOR, FREE AND CLEAR OF ALL CLAIMS AND INTERESTS OF CREDITORS. NEITHER THE DEBTOR, THE CREDITORS COMMITTEE, IFANY, THE DIP AGENT, THE TRUSTEE, OR ANY OF THEIR RESPECTIVE PRESENT ORFORMER MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, PROFESSIONALS, OR AGENTS, WILL HAVE OR INCUR ANYLIABILITY TO ANY HOLDER OF A CLAIM OR AN INTEREST, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR

**RESPECTIVE AGENTS,EMPLOYEES, REPRESENTATIVES, ADVISORS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OROMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, ORIMPLEMENTATION OF THE PLAN, THE SOLICITATION OF ACCEPTANCES OF THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN,THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TOBE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS WHICH ARE THE RESULT OF FRAUD, GROSS NEGLIGENCE, ORWILLFUL MISCONDUCT OR WILLFUL VIOLATION OF FEDERAL OR STATE SECURITIES LAWS OR THE INTERNAL REVENUE CODE, AND IN ALLRESPECTS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES ANDRESPONSIBILITIES UNDER THE PLAN.**

### ARTICLE 2. DEFINITIONS.

As used in the Plan, the following terms shall have the respective meanings specified below:

2.1. **"Administration Claimant"** -any person entitled to payment of an Administration Expense.

2.2. **"Administration Expense"**- any cost or expense of administration of the chapter 11 case entitled to priority under Section 507(a)(1) and allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, and actual and necessary expenses incurred post-petition by the Debtor-in-Possession, any indebtedness or obligations incurred by or assessed against the Debtor-in-Possession, or for the acquisition or lease of property or for providing of services to the Debtor-in- Possession, and allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

2.3. **"Allowed Claim"** - any claim against the Debtor, proof of which was filed on or before the last date designated by the Bankruptcy Court as the last date for filing proofs of claims, if no proof of claim is filed which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed or such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan,

"Allowed Claim" shall not, for the purposes of computation or Distributions under the Plan, include post-petition interest on the amount of such Claim.

2.4. **"Allowed Priority Tax Claim"** - a Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.5. "**Allowed Secured Claim**" - a Secured Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.6. **"Allowed Unsecured Claim"** - an Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.7. **"Bankruptcy Code"** - the Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

2.8. **"Bankruptcy Court"** - the unit of the United States District Court for the Western District of Texas, San Antonio Division, having jurisdiction over this chapter 11 case, or in the event such court ceases to exercise jurisdiction over this chapter 11 case, such court or adjunct thereof that exercises jurisdiction over this chapter 11 case in lieu of the United States Bankruptcy Court for the Western District of Texas.

2.9. **"Bankruptcy Rules"** - the Rules of Bankruptcy Procedure as amended, as applicable to this chapter 11 case.

2.10. **"Cash"** - cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

2.11. **"Chapter 11 Case"**–this case under chapter 11 of the United States Bankruptcy Code in which Stone Creek Village Property Owners Association, Inc., is the Debtor-in-Possession.

2.12. **"Claim"** - any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

2.13. **"Committee"** - any Committee of Creditors appointed by the United States Trustee in this chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

2.14. **"Confirmation Date"** - the Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

2.15. **"Confirmation Order"** - an order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.16. **"Creditor"** - any person that has a Claim against the Debtor that arose on or before the Petition Date.

2.17. **"Debtor-in-Possession"**–refers to Stone Creek Village Property Owners Association, Inc., as Debtor-in-Possession.

2.18. **"Debtor"**–refers to Stone Creek Village Property Owners Association, Inc., the Debtor under this chapter 11 case.

2.19. **"Distributions"** - the property required by the Plan to be distributed to the holders of Allowed Claims.

2.20. **"Effective Date"** - the first day of the month following ten days after the Confirmation Date.

2.21. **"Final Order"** - an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

2.22. **"Petition Date"** –November 4, 2010, the date the chapter 11 petition for relief was filed.

2.23. **"Plan"** - this Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

2.24. **"Priority Non-Tax Claim"** - any claim other than Administrative Expense or a Priority Tax Claim to the extent entitled to priority and payment under Section 507(a) of the Bankruptcy Code.

2.25. **"Priority Tax Claim"** - any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.26. **"Schedules"**–the Schedules and Statement of Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

2.27. **"Unsecured Creditor"** - any Creditor that holds a Claim which is not a Secured Claim.

### ARTICLE 3. CLASSIFICATION OF CLAIMS

3.1. **Classification**. Claims are classified as follows:

    Class A - Administrative Expense Claims and Priority Tax Claims
    Class B - General Unsecured Claims for Trade Accounts
    Class C - General Unsecured Claim held in Litigation Class
    Class D – Claims of Shareholders.

### ARTICLE 4. PAYMENT OF CLASS A CLAIMS

4.1. **Impairment.** This class is impaired within the meaning of Section 1124 of the Bankruptcy Code.

4.2. **Administrative Expense Claims**. Each Allowed Administration Expense Claim shall be paid in full in Cash immediately when the respective Claim becomes due and payable, under the terms of such claimant's agreement with the Debtor, or upon such other terms as may be agreed upon by and between any Administration Claimant and the Debtor.

4.3. **Professional Compensation and Reimbursement Claims**. Professional Compensation and Reimbursement Claims shall be paid in full in Cash or upon such other terms as may be agreed upon by and between any Administration Claimant and the Debtor. In the case of Bankruptcy Court-approved professional persons who have rendered services on behalf

8

of the Estate prior to the Confirmation of the Plan, any Administrative Claim arising in favor of such a professional person shall be paid in full, immediately upon the entry of an order by the Bankruptcy Court, allowing such fees and ordering them paid, or thereafter at such time as may be agreed upon by the Debtor and the professional person who is entitled to payment. All fees for professional services that may be rendered on behalf of the Estate following Confirmation of the Plan shall be paid directly by the Debtor to the professional person rendering such services, without the necessity of application to the Bankruptcy Court for payment of same. The payment of any such professional fees will be made from the normal operating funds of the Debtor.

4.4. **Priority Tax Claims**. Priority Tax Claims shall be paid in full in Cash or upon such other terms as may be agreed upon by and between any Administration Claimant and the Debtor.

4.5. **Bar Date for Fee Claim**. The Confirmation Order shall provide a bar date for filing of claims by those entities asserting claims for compensation under Sections 330 and/or 503 of the Bankruptcy Code.

### ARTICLE 5. PAYMENT OF CLASS B CLAIMS

5.1. **Impairment.** This class is impaired within the meaning of Section 1124 of the Bankruptcy Code.

5.2. **Classification**. Class B claims arise from the ordinary operations of the Debtor. Payment of these claims is essential to preserve the Debtor's ongoing ability to operate and to maintain a business relationship with its service providers. Class B claims include General Unsecured Claims as follows:

a. Claims of the City of Boerne for Utilities in the amount of $5,268.09;

b. Claims of Jurado Landscaping for Landscaping Services in the amount of $4,500.00;

c. Claims of Bristile Properties for Property Management Services in the amount of $3,463.82;

d. Claims of Waste Management, Inc. for Trash Removal incurred at $1004.23 per month for afull amount of $3,012.69;

e. Claims of Myrna Paulsen for Employee Salary in the amount of $2,200.00;

f. Claims of Farmers Insurance for Insurance Premium in the amount of $2,044.38;

    g. Claims of Jesus Ortiz for Employee Salary - Maintenance in the amount of $1,404.00;

    h. Claims of Edward Trevino for Employee Salary - Maintenance in the amount of $1,180.45;

    i. Claims of Verizon Wireless for Wireless phone service in the amount of $995.75;

    j. Claims of Boerne Business Monthly for Advertising in the amount of $750.00;

    k. Claims of Time Warner – San Antonio for Cable/Internet in the amount of $467.10;

    l. Claims of ABC Pest & Lawn Service for Pest Control in the amount of $464.40;

    m. Claims of For Rent for Advertising in the amount of $414.90;

    n. Claims of Smart Receptionist for answering service in the amount of $389.91;

    o. Claims of Inky Frog Media for Website and Computer Maintenance in the amount of $354.75;

    p. Claims of ADT Security for Security quarterly charge for monitoring alarm systems in the amount of $163.98;

    q. Claims of River City Pump and Supply for Lift Station Service in the amount of $140.73.

5.3. **Payment of Class B Claims**. Class B is comprised of the general unsecured claims held by Creditors that the Debtor estimates are a total of $27,214.95. During the course of the Debtor's possession in bankruptcy, monthly net income has ranged from a high of $5,477.26 to a low (net loss) of -2,385.86. This variability means that although the Debtor has an average net income of $1,668.08 from the petition date to present, the cash available for satisfaction of Class B claims in any given month may be substantially reduced. Therefore, the Class B claims will be paid in cash as follows:Beginning on the Effective Date the Debtor will make regular payments of six hundred dollars ($600.00)paid pro rata to the various claim holders for the lesser of a period of forty-eight (48)monthsor until the Class B claims are fully satisfied.

### ARTICLE 6. PAYMENT OF CLASS C CLAIMS

6.1. **Impairment.** This class is <u>impaired</u> within the meaning of Section 1124 of the Bankruptcy Code.

6.2. **Classification.** The Class C claim consists of aGeneral Unsecured Claim Held in Litigation, namely, a contingent and disputed Judgment in the amount of $1,815,104.51 awarded against Debtor and in favor of John and Nelda Vogt in a state court action styled *John E. Vogt et al. v. Trada Partners VI, LP et al*, Cause No. 06-150, in the 216th Judicial District Court of Kendall County, Texas. The Class C claimant has submitted a Proof of Claim in the amount of $153,123.19, which includes the portion of the judgment levied solely upon Debtor and the entirety of the portion for which Debtor is jointly and severally liable, plus interest. This claim arising from the state court action is contingent and disputed. The state court action is currently pending on appeal in the Fourth Court of Appeals in Case No. 04-10-00602-CV. Although Debtor is not a party to the appeal, if some of the easement issues in the appeal are resolved against the Class C claimants, the basis for their claim against Debtor would become void.

6.3. **Payment of Class C Claims**. Class C is comprised of the disputed, contingent claim held by John and Nelda Vogt as a result of a state court lawsuit fordamages that was pending at the time the petition for relief was filed.The pending appeal may strip the Class C claimant of their entitlement to any recovery for the Class C claim.However, during the pendency of the appeal and to ensure a timely conclusion of this bankruptcy, Debtor proposes a lump-sum payment in the amount of ten thousand dollars ($10,000.00) in full satisfaction of the judgment and all individual or joint and several pre-petition claims by John E. Vogt and Nelda L. Vogt against the debtor. This payment may be funded at the Association's discretion by a distribution from operating funds or by levy of special assessment to its membership.

### ARTICLE 7. PAYMENT OF CLASS D CLAIMS

7.1. **Classification**. This Class consists of the shareholders of the Debtor. Although Debtor's petition lists a claim of $42,595.76 as pre-paid dues owed to those shareholders that have prepaid their Association dues, this is more properly categorized as a contingent interest. Although that amount would be due as a claim in liquidation, if the Debtor is able to complete a Chapter 11 reorganization, those funds would be properly retained and utilized by the Debtor in its ongoing operation. Therefore, under this Plan, the contingent interest would not vest and no payment is due to shareholders. The shareholders will retain their interests in the Debtor, but will not receive any distribution under this Plan.

11

7.2. **Impairment.** This class is <u>unimpaired</u> within the meaning of Section 1124 of the Bankruptcy Code.

### ARTICLE 8. IDENTIFY OF IMPAIRED/ NOT IMPAIRED CLAIMS

8.1. **Unimpaired Classes**. No Classes except for Class D are unimpaired under the Plan. A class of claims is impaired when a plan does not leave unaltered the legal, equitable, and contractual rights to a claim. Shareholder interests are also impaired when their legal and equitable interests are not left unaltered. *See* 11 U.S.C. §1124.

8.2. **Controversy Concerning Impairment**. In the event of a controversy as to whether any Creditors or class of Creditors are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### ARTICLE 9. ACCEPTANCE OR REJECTION OF PLAN.

9.1. **Impaired Classes to Vote**. Each impaired class of Creditors with Claims against any of the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. Any member of a class that is proposed to receive nothing under the Plan is deemed to have rejected the Plan and is not permitted to vote on the Plan.

9.2. **Acceptance by Class of Creditors**. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of such class that have accepted or rejected the Plan.

9.3. **Cramdown**. In the event that any impaired class of Creditors with Claims against any of the Debtor's estate fails to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor shall request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code. In the event that one or more classes of impaired claims does not approve the Plan by the requisite vote, the Debtor shall seek confirmation of the Plan pursuant to the provisions of Section 1129(b) of the Bankruptcy Code.

### ARTICLE 10. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

10.1. **Assumption of Executory Contracts Under the Primary Plan**. In the event of the Confirmation of the Plan, any executory contracts or unexpired leases not rejected by the Debtor pursuant to 11 U.S.C. §365 prior to the Confirmation Date or which are not the subject of a motion to reject the same pending as of the Confirmation Date shall be

deemed to have been assumed by the Debtor upon the Confirmation Date, in accordance with Section 365 of the Bankruptcy Code.

### ARTICLE 11. PROVISIONS COVERING DISTRIBUTIONS

11.1. **Payments Made on the Effective Date.** Payments to be made by the Debtor pursuant to the plan shall be made beginning on the Effective Date, or as may be ordered by the Bankruptcy Court.

11.2. **Method of Payment.** Payments to be made by the Debtor pursuant to the Plan shall be made from Debtor's available Cash or proceeds for the sale of Debtor's assets with a check drawn on a domestic bank or by wire transfer from a domestic bank Plan of Reorganization.

11.3. **Payment To Be Made by the Debtor.** Distributions to be made to Creditors under the Plan shall be made by the Debtor, Stone Creek Village Property Owners Association, Inc.

### ARTICLE 12. RESOLVING DISPUTED CLAIMS

12.1. **Bar Date for Objections to Claims.** Unless otherwise ordered by the Court, after notice and a hearing, objections to Claims shall be made and filed by the Debtor or any party in interest and shall be served upon each holder of each of the Claims to which objections are made (and upon the Debtor's attorney if the Debtor is not the objecting party) and filed with the Bankruptcy Court as soon as practicable, but in no event later than ninety (90) days subsequent to the Effective Date.

12.2. **Prosecution of Objections to Claims.** Debtor and any party in interest shall have the authority to object to and contest the allowance of any Claims filed with the Bankruptcy Court in respect of any Claims listed as disputed, contingent or unliquidated on the Debtor's Schedules, except claims otherwise treated by the Plan or previously allowed or disallowed by Final Order of the BankruptcyCourt.If the Plan provides for any payment under the Plan, all allowed Claims will be paid pursuantto the applicable terms.The objecting party shall litigate to judgment, settle or withdraw objections to Disputed Claims.

### ARTICLE 13. DEFAULT.

13.1. **Event of Default**. No default in the performance of this Plan shall automatically result in the termination of thePlan or constitute a revocation of the Order Confirming the Plan. In the event that the Debtor defaults under the provisions of the Plan (as opposed to a

13

default under documentation executed in implementing the terms of the Plan, which documents shall provide independent bases for relief), any creditor or party in interest desiring to assert such a default shall provide the Debtor with written notice of the alleged default. The Debtor shall have thirty (30) days from receipt of the written notice in which to cure the default. Such notice shall be delivered by certified mail, return receipt requested to the attorney for the Debtor at the address stated on the final page hereof. If the default is not cured, any creditor or party in interest may thereafter file and serve upon attorney for the Debtor a motion to compel compliance with applicable provisions of the Plan. The Bankruptcy Court, upon finding a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan.Alternatively, creditors may resort to applicable non bankruptcy law upon default and failure to cure by the Debtor.

13.2. **Failure to Make Payment to IRS**.A failure by the Debtor to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the fifteenth (15th) of each month; if there is a default as to the IRS, IRS must send written demand for payment to the Debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the Debtor can receive up to five (5) notices of default from the IRS, the fifth (5th) default cannot be cured and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the IRS, including secured, unsecured priority and unsecured general claims.The IRS is bound by provisions of the confirmed Plan and is barred under 11 U.S.C. § 1141 from taking any collection action against the Debtor for pre-petition claims during the duration of the plan (provided there is no default as to the IRS). The period of limitations of collection remains suspended under 26 U.S.C. § 6503(h) for tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the IRS having been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

### ARTICLE 14. MISCELLANEOUS.

14.1. **Discharge of Debtor;Title to Assets; Discharge of Liabilities.** Except as otherwise provided by the Plan, on the Confirmation Date, title to all assets and properties dealt with by the Plan shall vest in theDebtor, as the case may be, in accordance with Section 1141 of the Bankruptcy Code, free and clear of all Claims other than those noted.

14.2. **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

14.3. **Quarterly Reports.** The Debtor proposes to provide a quarterly report to all unsecured creditors, and any other party requesting said report, describing all sales conducted during the reporting period; the debts paid to the holders of any secured claims on the property sold during that period; the net proceeds from the sales; all other operating expenses during that period, including any salary paid to Mr. Theroux; and the distributions made to the unsecured creditors.

14.4. **Payment of U.S. Trustee Quarterly Fees and Submission of Statements of Disbursements.** The Debtor shall timely pay on the Effective Date all pre-confirmation quarterly fees owed to the United States Trustee. The Reorganized Debtor also shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this chapter 11 case, or enters an order either converting this case to a case under chapter 7 or dismissing the case. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the UnitedStates Trustee a true and correct statement of all disbursements for each quarter, or portion thereof, that this chapter 11 case remains open in a format prescribed by the United States Trustee.

14.5. **Retention of Jurisdiction.** The Court shall retain jurisdiction of this case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law.

14.6. **Amendment, Alteration, and Revocation** The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if Confirmation on the Effective Date does not occur, then (a) the Plan will be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of contracts or leases effected under the Plan, and any document or agreement executed pursuant to the Plan will be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, will (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

## ADOPTION OF PLAN

On June __, 2011, the Debtor adopted this Proposed Plan of Reorganization, which Plan shall become effective on the Effective Date defined herein:

Stone Creek Village Property Owners Association, Inc.

By: _____
     Richard Goldberg

*Attorney for Plan Proponent:*

_____

PRINS LAW FIRM
4940 Broadway, Suite 108
San Antonio, Texas 78209

Todd A. Prins
State Bar No. 16330400
Nathan G. Roach
State Bar No. 24052985
(210) 820-0833 [telephone]
(210) 820-0929 [facsimile]