SIGNED this 27th day of July, 2011.



_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| STONE CREEK VILLAGE PROPERTY OWNERS ASSOCIATION, INC. | 10-54343-C |
| *DEBTOR* | CHAPTER 11 |

### MEMORANDUM DECISION ON MOTION FOR DECLARATION ON THE APPLICATION OF THE AUTOMATIC STAY

CAME ON for hearing the foregoing matter. The debtor filed a motion seeking to determine the extent of the reach of the automatic stay, as set out in section 362(a) of title 11 of the United States Code. John and Nelda Vogt, plaintiffs and the holders of a judgment in Cause No. 06-150, *Vogt v. Trada Partners, et al.*, in the 216th Judicial District Court, Kendall County, Texas, appeared through counsel in response to the motion. After the presentation of

documentary evidence in the form of exhibits, and the presentation of arguments and authorities, the court now enters this, its memorandum decision and order thereon.

This debtor filed a chapter 11 bankruptcy petition on November 4, 2010. Upon filing, an automatic stay arose under federal law, applicable to all persons, with or without notice. *See* 11 U.S.C. § 362(a). The stay prevents the commencement or continuation of any judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case. *See* 11 U.S.C. § 362(a)(1). It also bars any actions to recover a claim against the debtor that arose before the commencement of the case. *See id.*

Other provisions of section 362(a) are also relevant. Actions to enforce against the debtor or against property of the estate a judgment obtained pre-petition are stayed. *See* 11 U.S.C. § 362(a)(2). Any act to obtain possession of property of the estate or of property from the estate, or to exercise control over property of the estate, is similarly stayed. *See* 11 U.S.C. 362(a)(3). Any act to create, perfect, or enforce any lien against property of the estate is also stayed. *See* 11 U.S.C. § 362(a)(4). Any act to create, perfect, or enforce any lien against property of the debtor to secure a claim that arose pre-petition is stayed. *See* 11 U.S.C. § 362(a)(5). Any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case is also stayed. *See* 11 U.S.C. § 362(a)(6).

In this case, there was an un-stayed judgment against the various defendants, including this debtor. The judgment assesses monetary damages against the debtor. It also contains a mandatory injunction directing the debtor to remove a certain structure said to be encroaching on the plaintiffs' property, and to cease all further encroachment on the plaintiffs' property. The

judgment also finds that the debtor (a property owners association) is the owner of the common area of Stone Creek Village (a residential PUD). A show cause order was issued against the defendants, including the debtor in this case, on October 21, 2010, directing said parties to appear on November 5, 2010 before the state court judge. The bankruptcy filing stayed the continuation of that action against this debtor. However, the action proceeded anyway. The state court was advised of the bankruptcy filing, and struck from the form of contempt judgment issued reference to the debtor. However, the state court failed to delete from the form of judgment tendered the findings of contempt with respect to the debtor. This court, on motion of the debtor, entered an order on January 31, 2011, finding that the findings contained in the contempt judgment were void and of no force and effect with respect to the debtor, having been entered against the debtor in violation of section 362(a)(1) of title 11.

There is also a turnover order outstanding against the debtor, issued pre-petition (October 19, 2010). That order states that the debtor owns property consisting of "rental income received and to be received from the property [the owners] own at the Stone Creek Village and Stone Creek Plaza … and … income from property owner dues and assessments." The debtor in that order was directed to "turn over the property identified above ..." to the Kendall County Sheriff, with the sheriff then directed to "apply all receipts ... to satisfaction of the judgment and pay over such receipts to the judgment creditors ..." The turnover aspect of that turnover order was also stayed as to the debtor by the debtor's bankruptcy filing.

At a hearing in January, this court authorized the plaintiffs to proceed with a contempt action in state court involving defendants other than this debtor. The court was reassured that the contempt action would not affect the debtor or violate the automatic stay. The action proceeded before the Honorable N. Keith Williams, District Judge for Kendall County, Texas. After hearing

arguments from the parties, Judge Williams entered a contempt judgment against the defendants, expressly not including this debtor, finding them in contempt for not abiding by the terms of the turnover order. The order directs, in relevant part, that the named defendants turn over "all of the rental income [they have] received from the property [they] own[] at the Stone Creek Village ... since October 18, 2010 ...." The contempt judgment does not direct the debtor to turn over funds in its possession, nor does it purport to adjudge the debtor in contempt for failing to turn over funds.

The debtor suggests in its motion that the contempt order of January 31, 2011, read *in pari materia* with the turnover order of October 18, 2010, effectively violates one or more provisions of section 362(a). At the outset, the court notes that the contempt judgment by its terms applies only to the other named defendants in the state court suit. It directs their arrest and incarceration for civil contempt until such time as they comply with the turnover directive – and delimits that directive to rental income that they have received. The contempt judgment does not speak to funds *due* to them from rents collected by the debtor pursuant to the terms of the Declaration and the By-Laws. Those funds are, by definition, funds that have *not* yet been received by the defendants. Thus, the contempt judgment does not violate the strictures of section 362(a), and there is no need for this court to intervene to void any of its provisions insofar as they might otherwise have affected the debtor.[1]

The motion seeks a declaration of the scope and extent of the automatic stay. At hearing,

---

[1] It is worth noting that the state court that issued the contempt judgment with respect to the turnover order was very careful in assuring that the judgment would not apply to the debtor or property of the debtor's estate. Debtor's counsel was present at the hearing and engaged in conversation with the judge to ensure that outcome. Accordingly, while the original turnover order from October 18, 2010 may, by its terms, require the debtor to turn over property of the estate, that order has been stayed with respect to the debtor. The contempt judgment only seeks to enforce that order insofar as it requires turnover from the non-debtor defendants. No stay violation has occurred by way of that

4

the court asked the parties about what constitutes property of this bankruptcy estate, out of concern that all parties are better served knowing both the extent of this court's jurisdiction and the scope and reach of the automatic stay. Essentially four categories of potential property rights were identified by the parties. First, there is the Common Area of Stone Creek Village. Second, there are the various assessments (regular, extraordinary, and special). Third, there are the rents collected from the various tenants of the apartment units. Fourth, there are the fees and dues and reimbursements due the debtor for property management services, rent collection services, and the payment of certain common utilities (trash collection, cable service, and sewer). Understanding what is and what is not property of the estate is essential to the determination of the scope of the automatic stay, because the stay is imposed on actions that affect property of the debtor and property of the estate. *See* 11 U.S.C. §§ 362(a)(2)-(6). This court has exclusive jurisdiction over property of the estate, including exclusive jurisdiction to determine what is and is not property of the estate. *See* 28 U.S.C. § 1334(e).

With regard to the Common Area, the court concludes that the Common Area of Stone Creek Village is not property of the debtor's bankruptcy estate. The court fully recognizes that there is a state court judgment that makes a contrary finding in that regard. This court's finding is not a collateral attack on that judgment. That judgment is currently (it is understood) the subject of an appeal before the Texas Fourth Court of Appeals. However, that finding is not and cannot be binding on this court for purposes of determining what is and is not property of the estate. *See Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218, 224 (5th Cir. 2001) ("It has long been established that federal bankruptcy law determines the scope of a debtor's bankruptcy estate."). The state court judgment did not purport to reach the question whether the Common Area would

---

contempt judgment.

be property of the bankruptcy estate of this debtor because there was no bankruptcy pending at that time. This court, having the exclusive jurisdiction to rule on what is and is not property of the estate for purposes of section 541 of title 11, can and must reach the question independently, as it is a matter of federal law what is and is not property of the estate in a bankruptcy case. *Id*; *see also Prudence Realization Corp. v. Geist*, 316 U.S. 89, 95 (1942) ("The court of bankruptcy is a court of equity to which the judicial administration of the bankrupt's estate is committed, … and it is for that court—not without appropriate regard for rights acquired under rules of state law—to define and apply federal law.") (citations omitted); *Texas v. Wellington Resources Corp.*, 706 F.2d 533, 536 (5th Cir. 1983) (stating that "insofar as determining whether the assets were part of the bankrupts' estates or not, the bankruptcy court in the exercise of exclusive federal jurisdiction to determine the issue, did not impermissibly interfere with the pending state judicial proceedings.")

While federal law determines the scope of a debtor's bankruptcy estate, "in the absence of controlling federal bankruptcy law, the substantive nature of the property rights held by a bankrupt and its creditors is defined by state law." *In re Harbor Oil Co.*, 12 F.3d 426, 435 (5th Cir. 1994); *see also Yaquinto*, 247 F.3d at 224 ("A debtor's pre-petition rights in property … are determined according to state law"); *Texas v. Wellington Resources Corp.*, 706 F.2d 533, 536 n.4 (5th Cir. 1983) ("While the interest of a debtor in property is determined by State law, the question whether such property is property of the debtor's estate is a federal question to be resolved under the Bankruptcy Code."). Here, the debtor is a property owners' association that came into existence pursuant to Texas law and pursuant to the Declaration of Covenants, Conditions and Restrictions for Stone Creek Village Apartments (the "DCCR"). While the

6

debtor is charged with numerous duties relating to the Common Area of the development, the debtor has no fee interest in that property. Instead, the Common Area is held by the Owners, as tenants in common. *See* DCCR; *Dutcher v. Owens*, 647 S.W.2d 948, 949 (Tex. 1983) ("A condominium is an estate in real property consisting of an undivided interest in a portion of a parcel of real property together with a separate fee simple interest in another portion of the same parcel. In essence, condominium ownership is the merger of two estates in land into one: the fee simple ownership of an apartment or unit in a condominium project and a tenancy in common with other co-owners in the common elements."). Indeed, the debtor itself has consistently maintained that it does not own any property. Because the debtor has no property interest in the Common Area under state law, the Common Area is not property of the debtor's estate under section 541 of the Code.

Because the Common Area does not constitute property of the debtor's estate, the automatic stay will not prevent the state court plaintiffs from seeking to enforce their state court injunction with respect to the Common Area against the non-debtor defendants. It is worth noting that the debtor here has not requested that the court extend the automatic stay to the non-debtor defendants in an effort to preclude enforcement of the state court injunction against those entities. Even were the debtor to make such an effort, however, the court doubts that *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) and that line of case law would support extending the stay to the non-debtor defendants here. First, the contempt order enforcing the state court injunction does not affirmatively require the debtor to carry out the mandate of the injunction. Rather, the injunction requires the non-debtor defendants to take certain actions with respect to their encroachments upon the state court plaintiff's easement. These actions include the destruction of property that will affect the common area over which the debtor has

maintenance and repair responsibilities. The DCCR does not place any duty on the debtor to oppose enforcement of the state court injunction. The DCCR merely lists the debtor's duties with respect to the common area and states that the debtor has the authority to take any action reasonably necessary to enforce the provisions of the DCCR, by-laws, etc. *See* DCCR, pp. 15-17. Second, the DCCR is subject to applicable state law, which now includes the state court injunction. In other words, the DCCR actually requires that the debtor comply with the injunction (or at least not to violate its proscriptions). Thus, no party can claim that the debtor is violating the DCCR by failing to disobey the state court injunction (under some theory that the debtor had a responsibility to do as part of its duties to maintain the common area). The state court contempt judgment enforcing the injunction against the non-debtor defendants does not mandate that the debtor take any action with respect to the common areas; and for the reasons explained above, enforcement of the injunction against the non-debtor defendants will not alter the debtor's responsibilities with respect to the property under the DCCR.[2]

With regard to monies received by the debtor from property owners' assessments, under Texas law, "the right to require that all property owners pay assessment fees is an inherent property right owned by the [unit] owners, resting in the control of and right of enforcement by [the homeowners' association]." *Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n,* 933 S.W.2d 570, 577 (Tex. App. Houston [1st Dist.] 1996). As articulated by the Supreme Court of Texas in *Inwood North Homeowners' Ass'n v. Harris*,

> The concept of community association and mandatory membership is an inherent property interest. The declaration defines the rights and obligations of property

---

[2] The court did not find any case law addressing the applicability of the automatic stay on facts like those presented here—i.e. where enforcing a judgment against non-debtors would affect property not owned by the debtor, but with respect to which the debtor has certain responsibilities. Nonetheless, the court believes that the reasoning of *S.I. Acquisition* and that line of cases cannot be extended to cover such a situation.

> ownership. The mutual and reciprocal obligation undertaken by all purchasers in Inwood Homes creates an inherent property interest possessed by each purchaser. The obligation to pay association dues and the corresponding right to demand that maximum services be provided within the association's budget are characteristics of that property interest. Moreover, the right to require that all property owners pay assessment fees is an inherent property right.

736 S.W.2d 632, 636 (Tex. 1987). Accordingly, the right to demand and receive assessments is a right owned by the homeowners themselves, not the homeowners' association. The homeowners' rights are enforceable by the debtor, which demands and receives the assessments for the benefit of the homeowners. *See* DCCR, p. 18 ("The Assessments levied by the Association shall be used exclusively to promote the health, safety and welfare of all the Owners of Lots in the entire Apartment Rental Community and/or for the operation, maintenance, improvement, repair and replacement of the Common Area for the common good of the Apartment Rental Community.").

But this does not answer the question of whether the assessments received by the debtor constitute property of the debtor's bankruptcy estate, or whether they should be considered to be held in trust for the benefit of the homeowners such that the assessments would not constitute property of the estate.[3] That the debtor may act as an agent for the homeowners in collecting the assessments,[4] and that the debtor may hold the monies received in trust to be used for the benefit of the homeowners,[5] does not mean that those funds necessarily must be excluded from the

---

[3] *See Weiner v. A.G. Minzer Supply Corp. (In re UDI Corp.)*, 301 B.R. 104, 111 (Bankr. D. Mass. 2003) ("It is axiomatic that property held in trust by the Debtor on behalf of another is not property of the estate.").

[4] This court has previously recognized that a homeowners' association "is not a discrete party performing maintenance services for a fee. It is merely the agent of each and every owner, a mechanism created as part and parcel of the equitable servitude which burdens the estate of each owner, functioning to assure that each owner receives the benefits that the equitable servitude was intended to confer." *Beeter v. Tri-City Property Management Servs. (In re Beeter)*, 173 B.R. 108, 115 (Bankr. W.D. Tex. 1994).

[5] Indeed, under Texas law the DCCR does create a trust in favor of the property owners with respect to the assessments received by the debtor. "Texas law defines a trust as 'a fiduciary relationship in which one person holds a property interest subject to the equitable obligation to keep or use that interest for the benefit of another.' An implied trust, sometimes referred to as a trust by operation of law, is created under Texas law through 'an implication of intention to create a trust as a matter of law. . .'" *In re Denton*, 169 B.R. 608, 611 (Bankr. W.D. Tex. 1994) (citing 72 TEX. JUR. 3d Trusts §§ 1, 4 (1990)); *see also* TEX. PROP. CODE § 111.004 (defining "express trust" as "a fiduciary relationship with respect to property which arises as a manifestation by the settlor of an intention to create the relationship and which subjects the person holding title to the property to equitable duties to deal with the

debtor's bankruptcy estate. Rather, the determinative question concerns the amount of control the debtor has over the funds received. *See In re Cowles*, 143 B.R. 5, 7 (Bankr. D. Mass. 1992) ("Several courts have found that 'where the debtor, "in one capacity or another" dominates all aspects of the trust to the extent that he exercises absolute dominion and control over the assets, his interest in the trust . . . constitutes property of the estate.'") (quoting *In re Steffan*, 97 B.R. 741, 745 (Bankr. N.D.N.Y. 1989)).

In *Southmark Corp. v. Grosz (In re Southmark)*, the Fifth Circuit addressed whether certain transfers from the debtor's account could be avoided under section 547 as having been transfers of "property of the estate." 49 F.3d 1111, 1116-18 (5th Cir. 1995). The Court concluded that the transfers did, in fact, constitute property of the estate, contrary to the findings of the lower court, because "the check paid to [the transferee] was drawn on [the debtor's] Payroll Account, a general bank account containing commingled funds, to which [the debtor] held complete legal title, all indicia of ownership, and unfettered discretion to pay creditors of its own choosing, including its own creditors." *Id*. at 116. *See also Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1358 (5th Cir. 1986) (noting that "key" in determining whether funds constitute property of debtor's estate is whether debtor "controls" the funds); *In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1217 (9th Cir. 1988) (stating that money in commingled bank accounts under debtor's control "presumptively constitutes property of the debtor's estate."); *Youngblut v. Quag's Equip. L.L.C. (In re Pepmeyer)*, 2002 Bankr. LEXIS 416, at *9-10 (Bankr.

---

property for the benefit of another person."). Here, the DCCR provides that all assessments "shall be used exclusively to promote the health, safety and welfare of all the Owners of Lots in the entire Apartment Rental Community and/or for the operation, maintenance, improvement, repair and replacement of the Common Area for the common good of the Apartment Rental Community." (DCCR, p. 18.). Further, the Uniform Condominium Act, codified at TEX. PROP. CODE § 82.115, recognizes the role of a property owners' association as trustee.

N.D. Iowa Apr. 25, 2002) (checks deposited into debtor's account, commingled with debtor's funds, and subject to debtor's unrestricted use constituted property of debtor's estate).

Here, the evidence presented at the hearing showed that debtor places the assessments it receives in a bank account held in the debtor's name. Further, a review of the DCCR does not reveal any restrictions on the debtor's use of assessments received other than that they "shall be used exclusively to promote the health, safety and welfare of all the Owners of Lots in the entire Apartment Rental Community and/or for the operation, maintenance, improvement, repair and replacement of the Common Area for the common good of the Apartment Rental Community." (DCCR, p. 18.) The DCCR further provides that the Association shall establish a working capital fund "to meet unforeseen expenditures or to purchase any additional equipment or services reasonably required in the discretion of the Board, with the initial fund to be established by deposits at the closing of the sale of each lot by the Declarant, in the amount of at least two (2) months' Regular Assessments for such Lot." (DCCR, p. 19.) The debtor is also authorized to establish checking and savings accounts in the debtor's name. (DCCR, p. 6.)

Thus, considering the entire purpose of the debtor's formation and existence lies in serving the interests of the homeowners, the DCCR does not appear to place any real restrictions on how the debtor may use the assessments it receives. The assessments are to be used, broadly, "for the common good of the Apartment Rental Community." In other words, the debtor may use the assessments to pay expenses incurred on behalf of the entire community of homeowners. As such it cannot be said that the debtor holds the assessments in trust for the homeowners; rather, the debtor has the broad authority to use the assessments to pay the debtor's creditors as necessary for the upkeep, etc. of the property. The assessments are thus properly considered property of the debtor's bankruptcy estate. *See, e.g., Wachovia Bank of Georgia, N.A., v. Vacuum*

*Corp. (In re Vacuum Corp)*, 215 B.R. 277, 281 (Bankr. N.D. Ga. 1997) ("Funds normally are said to qualify as 'property of the estate' within the meaning of the Code *section 541* when the debtor exercises sufficient dominion and control thereover) (citing: 1 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 6-7, at 522 (1992) ("If the debtor determines the disposition of funds from the third party and designates the creditor to be paid, the funds are available for payment to creditors in general and the funds are assets of the estate.")). These funds are subject to the protection of the automatic stay.[6]

With regard to rental payments the debtor collects from tenants on behalf of the property owners and ultimately remits to the property owners (minus the debtor's fees and expense reimbursements discussed below), such net rental proceeds do not constitute property of the debtor's estate. The Bankruptcy Code provides that the bankruptcy estate shall include all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The Code further provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest … becomes property of the estate … only to the extent of the debtor's legal title to such property, but not to the extent of an equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). As explained by the First Circuit in *City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*,

> The plain text of § 541(d) excludes property from the estate where the bankrupt entity is only a delivery vehicle and lacks any equitable interest in the property it delivers. Identical language found in both the House and Senate reports that accompanied passage of the Bankruptcy Code strongly reinforces this plain reading. *See United States v. Yellin (In re Weinstein)*, 272 F.3d 39, 43, 45-46 (1st Cir. 2001) (further supporting plain-text interpretation of Bankruptcy Code through legislative history). While noting that the overall scope of § 541 is broad, the reports continue: 'Situations occasionally arise where property ostensibly

---

[6] No party has attempted to take any kind of garnishment action with respect to assessments received by the debtor on behalf of the property owners.

belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.'

329 F.3d 204, 210 (1st Cir. Mass. 2003) (quoting S. Rep. No. 95-989 (1978), at 82, reprinted in 1978 U.S.C.C.A.N. 5787, 5868; H.R. Rep. No. 95-595 (1978), at 368, reprinted in 1978 U.S.C.C.A.N. 5963, 6324); *see also In re Refco, Inc. Secs. Litig. v. CSFB*, 2009 U.S. Dist. LEXIS 129944, at *52-53 (S.D.N.Y. Nov. 13, 2009) (noting that "[s]ection 541(d) of the Bankruptcy Code provides that the debtor must have an 'equitable interest' in property in order for it to become property of the estate" and citing the legislative history for section 541(d)); *T&B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1376 (11th Cir. 1989) (when the debtor held funds that, pursuant to contract, were to be paid out to certain individuals, the debtor was simply an intermediary and the funds were not property of the estate).

Here, the DCCR merely states that the debtor "will [] collect rent payments from the Occupants and deliver such payments to the appropriate Owners…" (DCCR, p. 15.) While neither the DCCR nor the by-laws of the debtor explicitly state that rental payments collected by the debtor are to be held in trust for the owners, the facts presented at the hearing certainly suggest as much.[7] The debtor is listed as the landlord/owner on the lease agreements for Stone

---

[7] "Technical words of expression are not essential for the creation of a trust." *Pickelner v. Adler*, 229 S.W.3d 516, 526 (Tex. App.—Houston [1st Dist.] 2007) (citation omitted). Rather, "in order to show an express trust [under Texas law], the controlling tests are that (1) the words of the settler ought to be construed as imperative and thus imposing an obligation on the trustee, (2) the subject to which the obligation relates must be certain, and (3) the person intended to be the beneficiary must be certain." *Id*. (quotations and citation omitted). Even if the obligation contained in the DCCR to collect the rental payments and remit them to the appropriate owners does not create an express trust, as explained below, the parties to the DCCR never intended the debtor to have anything other than bar legal title to the rental payments. An implied or resulting trust may be found in such circumstances. *See In re Denton*, 169 B.R. 608, 611 (Bankr. W.D. Tex. 1994) ("An implied trust, sometimes referred to as a trust by operation of law, is created under Texas law through 'an implication of intention to create a trust as a matter of law. . .'") (citing 72 TEX. JUR. 3d Trusts §§ 1, 4 (1990)); *Pickelner v. Adler*, 229 S.W.3d 516, 526 (Tex. App.—Houston [1st Dist.] 2007) ("'An express trust can come into existence only by the execution of an intention to create it by the

Creek Village. However, at the hearing all parties maintained that the debtor has only bare legal title to the rental payments it collects on behalf of the owners and has no equitable interest therein. The intention of the parties to the DCCR (i.e. the debtor and the property owners), at least as expressed by the debtor at the hearing (no property owner was present), was made clear: the debtor was never meant to have any equitable property interest in the rental payments collected on behalf of the owners. While the debtor has a contractual right to deduct fees and reimbursements from those payments, the parties to the DCCR always intended that equitable title to the rental payments would remain with the individual unit owners at all times. It is clear that the parties to the DCCR intended for the debtor to act as a mere conduit for the collection and subsequent remittance of rental payments to the owners. Although the rental payments received by the debtor are deposited into what is apparently a commingled account, at the hearing the debtor stated that it conducts separate accounting for these payments for each owner. Furthermore, the debtor itself does not actually process the rental payments; rather the payments are processed by a "rental agent" who presumably deducts the debtor's fees and expenses and then remits the rental proceeds to the owners.

In short, the parties' intentions with respect to these rental payments support the conclusion that these payments were held in trust for the benefit of the unit owners. *See In re Le*, 2007 Bankr. LEXIS 3974, at *7 n. 2 (Bankr. S.D. Tex. Nov. 21, 2007) (noting that '[t]he doctrine of resulting trusts is founded on the presumed intention of the parties . . .' and finding

---

one having legal and equitable dominion over the property made subject to it. A trust by operation of law, frequently called an 'implied trust, comes into existence either through an implication of intention to create a trust as a matter of law or through the imposition of the trust irrespective of, and even contrary to any, such intention. In other words, a trust intentional in fact is an express trust; one intentional in law is a resulting trust; and one imposed irrespective of intention is a constructive trust.'") (quoting *Mills v. Gray*, 147 Tex. 33, 37 (Tex. 1948)).

that the evidence showed the parties had intended the debtor to have an equitable interest in property, and thus the property constituted property of debtor's estate protected by the automatic stay) (citation omitted); *Weiner v. A.G. Minzer Supply Corp. (In re UDI Corp.)*, 301 B.R. 104, 111 (Bankr. D. Mass. 2003) (noting that "courts imposing a trust that excluded property from the bankruptcy estate have often held commingling to be of lesser import than the transferor's intent that the property benefit another."); *Pennsylvania Power & Light Co. v. Globe Store Acquisition Co. (In re Globe Store Acquisition Co.)*, 178 B.R. 400, 403-05 (Bankr. M.D. Pa. 1995) (holding that commingling was not determinative; payments of utility bills at Debtor's store were held in trust for the utility due to customer's intent that the monies go to the utility); *Shipley Co. v. Darr (In re Tap, Inc.)*, 52 B.R. 271, 277 (Bankr. D. Mass. 1985) (holding that while commingling of funds is a factor the court must weigh, "its presence does not dictate the finding of an absence of a trust relationship.").

The court is satisfied that the debtor here, whether acting pursuant to an express trust agreement or an implied trust arrangement, serves merely as a conduit for the rental payments and has no equitable interest therein. As such, the unit owners' equitable interest in the rental payments is not included in property of the debtor's estate. *See Golden Mortgage Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.)*, 171 B.R. 79, 80, 83 (B.A.P. 9th Cir. 1994) (loan payments received by debtor/loan servicing agent never became property of the debtor's estate because the debtor "was only a conduit for the funds; except for its nominal fee, the debtor never had rights in the funds; and the parties never intended [the lender] to enter into a creditor relationship with [the debtor]."); *See also Branch v. Hill, Holiday, Connors, Cosmopoulos, Advertising (In re Bank of New England Corp.)*, 165 B.R. 972, 977 (Bankr. D. Mass. 1994) (holding that where parent company had collected funds from subsidiaries in advertising account

and paid ad firm' "a straight pass-through of the funds" occurred). Based on the foregoing the court concludes that the property owners' equitable interest in the rental payments collected by the debtor is not property of the debtor's bankruptcy estate and therefore is not protected by the automatic stay. As explained above, the January, 2011 contempt judgment at issue here only reaches the equitable interest of the property owners in the rental payments. It does not purport to reach any legal interest the debtor may have in those payments. Accordingly, no stay violation has occurred as a result of that state court judgment.

Finally, with regard to fees and reimbursements due the debtor for, inter alia, management services and utility payments (which fees and expenses the debtor is entitled to offset from rental income collected on behalf of the owners), such income constitutes property of the debtor's bankruptcy estate under section 541(a)(6). *See United States v. Ladum*, 141 F.3d 1328, 1340 (9th Cir. 1998) ("[I]ncome earned by a business after the filing of a bankruptcy petition is part of the property of the estate."); *In re Moyer*, 421 B.R. 587, 594 (Bankr. S.D. Ga. 2007) ("Section 541(a) (6) by its plain language speaks of earnings from services performed by an individual debtor as opposed to a non-debtor corporation."). Accordingly, any attempt to enforce a judgment against such income is precluded by the automatic stay. *See* § 362(a)(2).

A form of order consistent with this decision shall be separately entered.

# # #